IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs January 9, 2007

## MICHAEL J. HART v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Madison County**
**No. C-06-57     Roy Morgan, Judge**

---

**No. W2006-00783-CCA-R3-PC  - Filed March 15, 2007**

---

The Appellant, Michael J. Hart, appeals the denial of his petition for post-conviction relief by the Madison County Circuit Court.  Hart pled guilty to first degree felony murder, aggravated robbery, and felony evading arrest, and received an effective sentence of life without parole.  On appeal, Hart contends that his pleas were not knowingly and voluntarily entered due to trial counsel's ineffectiveness during the pre-plea proceedings.  Following review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed**

DAVID G. HAYES, J., delivered the opinion of the court, in which NORMA MCGEE OGLE and J.C. MCLIN, JJ., joined.

Mike Mosier, Jackson, Tennessee, for the Appellant, Michael J. Hart.

Robert E. Cooper, Jr., Attorney General and Reporter; David H. Findley, Assistant Attorney General; Jerry Woodall, District Attorney General; and Al Earls, Assistant District Attorney General, for the Appellee, State of Tennessee.

### OPINION

### Factual Background

The facts of this case, as recited by the prosecutor at the guilty plea hearing, are summarized as follows:

> . . . [O]n June 17th of the year 2004 around 9:30 a.m., Ms. Frances Riddick was at the mall here in Jackson-Madison County.  She parked her vehicle on the north side of Goldsmith's Department Store and went into the shoe department entrance.  As she walked into the door, she observed a black male, later identified to be the [Appellant], sitting on a stool at the door on the outside sidewalk.  When she exited the same door that she went in, this same black male, again the [Appellant], was still

outside the door. She went to her vehicle that was parked in the parking lot, and as she was fixing to put her key in the door, the black male approached her from the front of her vehicle, this being the [Appellant] . . . . He had a gun in his hand and he told her to give him her purse. He grabbed hold of her purse, and as they struggled over it, he eventually demanded that she give it to him at gunpoint which she did. He then fled to the mall area towards Goldsmith's. She ran after him, screaming for someone to help.

Three witnesses, Terry Reeves, Terry Reeves, Jr. and Brandon Stout saw the [Appellant] running, fleeing the scene with the purse, and they gave him chase through Goldsmith's into the courtyard of the mall, at which time in the courtyard, he did turn and fire a shot at these men chasing him, at which point they followed him at a more discreet distance.

During this time, police were advised of the situation and a call went out. While in the parking lot, Officer Haney did observe the [Appellant] and did give chase to the [Appellant] after demanding that he stop. The [Appellant] fled in a vehicle across over to Tinker Hill, from Tinker Hill went to Wiley Parker, running stop signs at Wiley Parker and Tinker Hill, went west on Wiley Parker down Wallace Road, down Old Hickory from Wallace, during this time reaching speeds up to 60, 65 miles an hour. The officer did have his emergency lights and equipment going trying to get the vehicle to stop. Other vehicles also joined in the chase which ranged over many streets here in Jackson including Hollywood Drive.

During this chase, the police videos were operating, and this is recorded on video, and this has been provided to the [Appellant] and counsel. . . . Police Officer Belke's vehicle was struck head-on by the [Appellant]. The [Appellant] was able to keep going. The chase continued to Deaderick, and finally the [Appellant] was stopped at the dry cleaners at Orleans and Highland.

The police video shows the [Appellant] exiting his vehicle with the pistol. Officer Andy Bailey was one of the vehicles that helped corner the [Appellant] at the dry cleaners. Officer Bailey did have a crack in the passenger's side window where the window had been lowered. The video showed the [Appellant] aiming the pistol through the window shooting Officer Bailey twice, one of those striking him in the abdomen area and one in the leg. As a result of those gunshots, Officer Bailey was killed.

Following his indictment for multiple crimes, the Appellant pled guilty, under the terms of the plea agreement, to felony first degree murder, aggravated robbery, and felony evading arrest. As provided by the plea agreement, the Appellant received concurrent sentences of life without parole for felony murder, eight years for aggravated robbery, and two years for evading arrest, resulting in an effective sentence of life without parole.

-2-

On February 16, 2006, the Appellant filed a *pro se* petition for post-conviction relief alleging that his pleas were not entered voluntarily or knowingly due to trial counsel's deficient performance during the pre-plea proceedings. Following the appointment of counsel, an amended petition was filed. A hearing was held on April 10, 2006, at which the Appellant and trial counsel testified.

The Appellant testified that after his incarceration in the Madison County Jail, but prior to his arraignment or appointment of counsel, he was interviewed, on camera, by a reporter with WBBJ, a local television station. According to the Appellant, he did not seek the interview with the television station and, further, was unaware that he had the right to refuse any such interview. The District Public Defender saw the televised interview, and, due to the Appellant's highly incriminating statements, requested appointment to the case to protect the Appellant's rights. Soon thereafter, at appointed counsel's request, the Appellant was transferred to Riverbend Maximum Security Institution in Nashville as a precautionary measure.

According to the Appellant, trial counsel met with him only a few times and never took time to explain the status of the case or the criminal proceedings. The Appellant testified that from the first meeting, trial counsel told him that he had no choice other than to plead guilty to the charges, despite the Appellant telling counsel that he was innocent of the charges and did not want to accept a plea agreement. The Appellant stated that he was told if he did not accept the plea agreement, the State would file notice to seek the death penalty. The Appellant further stated that he instructed trial counsel to hire an investigator to investigate ballistics testing, gunpowder residue, and eyewitness reports of the events. According to the Appellant, independent ballistics testing would show that the gunshot which killed Officer Bailey was not fired from the Appellant's weapon. The Appellant testified that the videotape taken by the police during their pursuit, as well as the taped television interview, was altered. The Appellant explained that he was coerced into pleading guilty because trial counsel told him that life without parole would be in his best interests.

Trial counsel testified that he conducted an investigation of the criminal charges and was provided open file discovery from the State. Counsel stated that he met with the Appellant on fourteen occasions and provided copies of the discovery materials to the Appellant. Trial counsel testified that the Appellant related to him that the videotaping of the police pursuit and the television station's taped interview had been altered. In response to the Appellant's claim, trial counsel had a computer technician examine the videotapes. After examination of the tapes, the technician determined that the tapes had not been inappropriately spliced or altered. Trial counsel acknowledged that there were two witnesses whom the Appellant wanted him to interview; however, these witnesses were not interviewed because their statements were refuted by the videotapes, which had virtually recorded the entire criminal episode.

Trial counsel acknowledged that he was advised that the Appellant's mother was mentally retarded and that the Appellant had attended special education classes. For these reasons, while the Appellant was incarcerated at Riverbend, trial counsel requested and was granted a mental evaluation of the Appellant, which was conducted by the psychiatric division of Vanderbilt University Medical Center. The results of the mental evaluation, which was conducted by a team of mental health

experts, concluded that the Appellant was competent to stand trial, that the defense of insanity could not be supported, and that there was no evidence to suggest that the Appellant was mentally retarded. Trial counsel informed the Appellant that the State's proof against him was extremely strong in view of the videotaped police pursuit through the city, the video of the Appellant fatally shooting the police officer, numerous eyewitnesses to the crimes, and the Appellant's admissions during the videotaped television interview. Additionally, counsel reviewed the ballistics report from the Tennessee Bureau of Investigation with the Appellant, which established that the .32 caliber bullet recovered from the victim was determined to have been fired from the .32 caliber revolver recovered from the Appellant. According to trial counsel, he provided the Appellant a realistic assessment of his chances at trial prior to the Appellant agreeing to accept the guilty plea.

Following the presentation of the evidence, the post-conviction court denied the Appellant's petition finding that the Appellant had received the effective assistance of counsel. This timely appeal followed.

**Analysis**

On appeal, the Appellant asserts that he was denied the effective assistance of counsel, and, as a result, his guilty pleas were not knowingly and voluntarily entered. In order to succeed on a post-conviction claim, the Appellant bears the burden of showing, by clear and convincing evidence, the allegations set forth in his petition. T.C.A. § 40-30-110(f) (2003). In evaluating the knowing and voluntary nature of a guilty plea, the United States Supreme Court has held that, "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S. Ct. 160, 164 (1970). In making this determination, the reviewing court must look to the totality of the circumstances. *State v. Turner*, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995); *see also Chamberlain v. State*, 815 S.W.2d 534, 542 (Tenn. Crim. App. 1990). Indeed, a

> court charged with determining whether . . . pleas were 'voluntary' and 'intelligent' must look to various circumstantial factors, such as the relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

*Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993).

Once a guilty plea has been entered, effectiveness of counsel is relevant only to the extent that it affects the voluntariness of the plea. In this respect, such claims of ineffective assistance necessarily implicate that guilty pleas be voluntarily and intelligently made. *Hill v. Lockhart*, 474 U.S. 52, 56, 106 S. Ct. 366, 369 (1985) (citing *North Carolina v. Alford*, 400 U.S. at 31, 91 S. Ct. at 164).

To succeed in a challenge for ineffective assistance of counsel, the Appellant must demonstrate that counsel's representation fell below the range of competence demanded of attorneys in criminal cases. *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975). Under *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984), the Appellant must establish (1) deficient representation and (2) prejudice resulting from the deficiency. In the context of a guilty plea, to satisfy the second prong of *Strickland*, the Appellant must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. at 59, 106 S. Ct. at 370; *see also Walton v. State*, 966 S.W.2d 54, 55 (Tenn. Crim. App. 1997).

The issues of deficient performance by counsel and possible prejudice to the defense are mixed questions of law and fact. *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). "A trial court's *findings of fact* underlying a claim of ineffective assistance of counsel are reviewed on appeal under a *de novo* standard, accompanied with a presumption that those findings are correct unless the preponderance of the evidence is otherwise." *Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001) (citing Tenn. R. App. P. 13(d)); *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997). However, *conclusions of law*, are reviewed under a purely *de novo* standard, with no presumption of correctness. *Fields*, 40 S.W.3d at 458.

On appeal, the Appellant argues that trial counsel's representation was deficient for the following reasons: (1) failing to file a motion to suppress the television interview; (2) failing to seek a change of venue; (3) failing to hire investigators to examine gun powder residue and conduct additional ballistic testing; (4) failing to investigate videotape and crime scene photos; (5) failing to interview witnesses; and (6) failing to obtain a more thorough mental evaluation of the Appellant.

First, we would observe that the mere allegation that trial counsel failed to act in some manner or failed to provide a specific legal service does not equate to a finding of deficient performance. To establish ineffective assistance of counsel, as alleged, requires "clear and convincing" proof that: (1) if counsel had performed as suggested, counsel's efforts would have yielded favorable results for the Appellant, the deficient performance prong; and (2) there is a reasonable probability that, but for counsel's errors, the Appellant would not have pleaded guilty and would have insisted on going to trial, the prejudice prong. The Appellant presented no proof at the hearing in support of the six assigned claims of deficient performance other than his own self-serving testimony. We are offered no authority as to how a motion to suppress the videotaped television interview, which was neither requested nor procured by the State, would have prevailed. Additionally, the Appellant has failed to establish the merits of a motion for change of venue. Moreover, we are provided no clue as to how an additional mental evaluation or additional ballistic testing would have benefitted the Appellant. It is also unclear how further investigations of the crime scene photographs and videotapes would have produced favorable evidence. Trial counsel is under no duty to conduct further testing or further investigation which would be futile or to file motions which are non-meritorious. When a claim of ineffective assistance of counsel is predicated upon a failure to investigate, the petitioner is obligated to show what a reasonable investigation would have revealed. *Owens v. State*, 13 S.W.3d 745, 756 (Tenn. Crim. App. 1999).

Lastly, the Appellant testified at the hearing that he was coerced by trial counsel into accepting a sentence of life without parole because trial counsel told him that if he did not accept this sentence, the State would seek the death penalty, and, in all likelihood, this would be the jury's verdict. At the guilty plea hearing, the State confirmed the fact that had the Appellant not accepted the sentence of life without parole, the State would have sought the death penalty in this case.

A plea of guilty is not invalid merely because it was entered to avoid the possibility of receiving a death sentence. *Brady v. United State*s, 397 U.S. 742, 755, 90 S. Ct. 1463, 1472 (1970). "Often the decision to plead guilty is heavily influenced by the defendant's appraisal of the prosecution's case against him and by the apparent likelihood of securing leniency should a guilty plea be offered and accepted." *Id.* at 756, 90 S. Ct. at 1473. The evidence in this case overwhelmingly established the Appellant's guilt. As previously noted, the Appellant's acts of approaching the police car, aiming a pistol through the window, and performing the execution-style slaying of Office Bailey, were documented on videotape, as well as being witnessed by numerous police officers and supported by forensic evidence.

A defendant's plea of guilty constitutes an admission in open court that the defendant committed the acts charged in the indictment. *Brady v. United States*, 397 U.S. at 748, 90 S. Ct. at 1468. The plea, however, is more than an admission; it is the defendant's consent that judgment of conviction may be entered without a trial. *Id.*, 90 S. Ct. at 1469. A defendant's sworn responses to the litany of questions posed by the trial judge at the plea submission hearing represent more than simply lip service. Indeed, the defendant's sworn statements and admissions of guilt stand as witness against the defendant at the post-conviction hearing when the defendant disavows those statements. Our review of the entire record affirmatively demonstrates that the Appellant's guilty pleas were made with an awareness of the consequences of the plea and that his guilty pleas were voluntarily and knowingly entered. *See State v. Mackey*, 553 S.W.2d 337, 340 (Tenn. 1977).

## CONCLUSION

Based upon the foregoing, the denial of the Appellant's petition for post-conviction relief by the Madison County Circuit Court is affirmed.

_____
DAVID G. HAYES, JUDGE